ELLIS, Judge.
The plaintiff-appellee, under authority of LSA-R.S. 48:441 et seq., expropriated the defendant’s building and land located at the-corner of Main and North 10th Streets in the City of Baton Rouge. The plaintiff has-deposited $100,000.00 in the registry of the court, representing the plaintiff’s estimate-of the market value of the real estate as of' the date of the taking, November 12, 1957,, *606 and on November 12, 1957 secured an order .of expropriation of the property by the then judge of the Nineteenth Judicial District ■Court, which said order was recorded November 12, 1957 in the conveyance records ■of the Parish of East Baton Rouge. Service of process of the notice of expropriation and certified copies of the petition, order ■of expropriation and receipt of the Clerk ■of Court were made on the defendant on November 13, 1957 in accordance with LSA-R.S. 48:446.
On July 30, 1958, approximately eight ■months after the suit was filed, and service made, the defendant filed an answer alleging he was entitled to receive, as just com■pensation, $152,500.00.
On November 13, 1958 the plaintiff filed a petition in which it alleged that more than ten days had elapsed since the date of serv.ice of process and the defendant had failed and neglected to file any motion to contest the validity of the taking on the ground that the property was not taken for a public use, as provided by LSA-R.S. 48:447, and that more than thirty days had elapsed since the date of service of process and the defendant had failed and neglected to file an answer within such period of thirty days, as required by LSA-R.S. 48:450, and that in •accordance with LSA-R.S. 48:452, defendant having failed and neglected to file answer timely, that such failure constituted a waiver of all defenses to the suit. Wherefore, the plaintiff prayed that a rule nisi issue, directed to the defendant, by the district judge as to why a final judgment should not be rendered, without the necessity of any further proceedings, in favor of plaintiff and against the defendant, affirming the amount of $100,000.00 as the final award of just and adequate compensation for the property and the property rights expropriated.
In answer to the petition for the rule nisi the defendant admitted that more than thirty days had elapsed since the date of service of process and defendant had failed to file answer within the said period but denied that he had waived his rights to a trial or hearing on the question of “just compensation”, and contended that the “waiver of defense” provided for in LSA-R.S. 48:452 referred to a waiver of the right to contest the validity of the taking by expropriation and not the question of “just compensation.”
In the alternative, the defendant urged in his answer that if it is the intent of LSA-R.S. 48:450, when construed in conjunction with Article LSA-R.S. 48:452, that respondent is deprived of all right to a hearing on “just compensation” by allowing thirty days to elapse after the service of process without filing answer, said provisions in the statute in question, viz., Act 107 of 1954, are unconstitutional and unlawful for reasons particularly but not exclusively described as follows, to-wit:
“(a) They would be violative of the provisions of Section 2 of Article 1 of the Louisiana Constitution, in that they would result in the taking of property without any judicial determination as to 'just compensation’.
“(b) They would be violátive of Section 2 of Article 1 of the Louisiana Constitution and of the 5th and 14th amendments of the United States Constitution in that they would deprive respondent of his property without due process of law, there being no adequate notice, no citation, no hearing and no final judgment rendered on the question of ‘just compensation.’ ”
Defendant further in the alternative in its answer alleged that in the event the Court would hold that the intent of the thirty day limit provided in LSA-R.S. 48:450, when construed with LSA-R.S. 45:452, is such that respondent loses all rights to a hearing on “just compensation” by failing to file an answer timely, and that said provision and Act 107 of 1954 are constitutional, defendant alleged that plaintiff’s proceeding was *607 improper in that no citation was issued as required by Article 179 of Louisiana Code of Practice, as the notice served on the defendant contained no maximum delay allowed for answering or filing other responsive pleadings, and containing no citation to make any defense.
As a further alternative the defendant alleged in its answer that the plaintiff was estopped from urging that he is not entitled to a hearing on just compensation because of the following prayer contained in his original petition, to-wit:
“Petitioner further prays that upon the final hearing herein there he judgment in favor of petitioner fixing the amount of just compensation at a sum not to exceed $100,000.00. (Italics supplied)”
The rule nisi was heard on its merits by the District Judge and judgment was rendered recalling and setting aside said rule.
Prior to the trial on the merits of the case the Honorable Judge of the District Court who heard the rule nisi was elevated to this Court and the matter, on the merits, was tried by his successor. At the beginning of the trial on the merits counsel for the plaintiff reurged its motion for a summary judgment and also entered a general objection to any evidence offered by defendant attempting to prove value in excess of the amount deposited by the state. Plaintiffs objection was overruled and the case was tried upon the merits resulting in a judgment fixing the just compensation of the property expropriated at the sum of $100,000.00 which was the amount deposited by the plaintiff, therefore rejecting the demands of the defendant for an increase in the compensation for the expropriated property.
The defendant appealed from the judgment of the District Court and the plaintiff moved to dismiss the appeal on the same grounds it had alleged in its motion for summary judgment. See State through Department of Highways v. Cefalu, La.App., 146 So.2d 658. This Court .refused to dismiss the appeal but without prejudice to the defendant’s right to have the grounds previously urged for a summary judgment in the district court and in its motion to dismiss heard, when and if the appeal was heard by this court.
Counsel for the plaintiff also filed in this court the peremptory exception of no right or cause of action in accordance with Article 2163, LSA-Code of Civil Procedure, upon the ground that defendant had no right to contend for a greater compensation than had been estimated by the State due to his failure to file his answer within the time prescribed by law. Counsel for the defendant-appellant contends that since the plaintiff neither appealed nor answered .the appeal therefore the judgment of the District Court refusing the motion for summary judgment, overruling the objection of plaintiff based upon the same ground at the beginning of the trial on the merits, foreclosed the right of this court to consider the question on this appeal. We cannot agree with the position taken by counsel for the defendant. The plaintiff has consistently maintained that the notice was proper and therefore the defendant-owner was precluded' from raising the question of value, by its motion for a summary judgment which was-refused, by its objection timely made prior to the introduction of testimony at the trial on the merits, by its motion to dismiss, and by the filing of an exception of no cause or right of action in this court. In its brief and argument before this court it is reurg-ing the position taken below, as well as. its exception of no cause or right of action and is entitled to have the question passed' upon by this court on this appeal.
It will be noted that LSA-R.S. 48 :- 441-48:460 is a special statute which is sui generis and provides for its own method of enforcement. More particularly, Sec. 48:-446 dealing with notice provides only that the Clerk of Court shall “issue a notice to each defendant in the- suit, notifying him *608 that the property described in the petition has been expropriated for highway purposes. * * * ” and providing further that such notice be accompanied by copies of the petition, order of expropriation and receipt of deposit. Upon authority of 29 C.J.S. Eminent Domain § 209, p. 1127, the statute is sui generis. In 29 C.J.S. Eminent Domain § 216, p. 1143, the general rule is stated to be that the mode of procedure pointed out by statutes providing for the exercise of the power of eminent domain must be pursued to the exclusion of all other remedies.
The statute does not require that the notice set forth in so many words that the delay for answering shall be 30 days. Moreover, as contended by the plaintiff, the •certified copy of the petition which is annexed to the notice recites that the proceeding is taken under the provisions of LSA-R.S. 48:441-48:460, [48:450], requiring the filing of an answer within 30 days. We agree, as contended by the State, that ■the provisions of the statute were complied with and that the notice is proper and legal .and that, therefore, defendant-owner is precluded from questioning value as has been 'held in State v. Higgins, 135 So.2d 306 and State v. Jackson Brewing Co., 146 So.2d 504.
The requirement in Sec. 48:446 to the effect that the notice shall be served by the Sheriff in the same manner as in civil suits relates only to the actual manner and method of effecting the physical act of service and has no connection with the content of the notice. We reiterate that nothing in 'Section 48:446 indicates that the notice ■prepared by the Clerk shall state that the ■owner must answer within 30 days under penalty of forfeiture of his right to claim additional compensation.
Although we feel that the rule suggested is harsh, we believe the views expressed '.herein are directly in line and consistent ■with the ruling of the Supreme Court of the State of Louisiana in State Through Department of Highways v. Macalusa, 235 La. 1019, 106 So.2d 455, in which it had before it an appeal from the judgment of the District Court holding the statute unconstitutional on the ground that it violated due process of the Constitution which was reversed and the act held constitutional in all respects.
We are therefore of the opinion that the motion for summary judgment filed by the plaintiff in the lower court should have been granted and that the obj ection made to any further trial on the merits should have been sustained, and that the exception of no cause or right of action must be sustained.
We have decided in the interest of justice and so that there shall be no delay should the Supreme Court of the State of Louisiana disagree with the above, to decide the case also on the merits. This is not to be construed as any lack of faith on the part of this court in the above and foregoing ruling, but merely to facilitate an end to this litigation should the higher court disagree.
The defendant-appellant contends that $100,000.00 is an inadequate price and the judgment of the trial court awarding that amount should be amended and increased. The value of the land, exclusive of all improvements is not in serious dispute. Of the three experts who testified for the defendant, two estimated the land value at $33,000.00. The third, Mr. J. Russell Doi-ron, calculated the land value to be only $30,000.00.
Mr. Lowell Roseman, the only expert who testified for the plaintiff,[1] estimated the land value to be $32,775.00. All estimates of land value were arrived at through a comparison of comparables. We believe $32,-775.00 best represents the market value of the land, exclusive of improvements.
The building situated on this land was fairly described as three buildings in one. *609 The building fronted on Main Street and was a two story brick, concrete and steel structure. The lower floor had plaster partitions dividing it into three stores, all of which were occupied by the defendant’s business, a clay tile company. Two of the store floors were asphalt tile and the third was concrete. A balcony sixteen feet wide and seven feet high ran through the three stores. The lower floor contained three separate sets of lavatory facilities of two pieces each. The ceiling was approximately fifteen feet high. There were three separate entrances, plate glass windows, and a metal awning across the front.
The second story of the main building had been designed as a warehouse and for that reason considerably more steel reinforcing and steel “I” beams had been used than were required for the nine converted efficiency apartments which were actually on the second floor.
These apartments were multiple use rooms plus a ceramic tile bath; and all but two contained kitchen facilities. The entrance to these apartments was from the rear only, though the building did have an exterior steel fire escape. All walls on the second floor were plaster and the floors were oak. The main building contained a total of 7764 square feet.
At the rear of the main building was a small two story duplex. The ground floor of this was originally a garage. This structure contained a total of 1032 square feet and was of brick and concrete block construction. This duplex had a common wall on the north with the main building and a second common wall on the south with a second duplex.
The second duplex, or third part of the entire structure expropriated was also of brick construction with plaster walls and had a total of 2276 square feet.
The trial judge in his written reasons for judgment has correctly stated the law applicable to the acceptable methods of valuing real estate in expropriation cases and we quote, in part, that opinion.
“The law of the case has been stated on innumerable occasions by our Supreme Court and the general rule is as follows:
“ * * the measure of compensation to be awarded the owner in expropriation proceedings is the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy, in other words, the market value of the property. It is well established that recent sales of comparable property are the best criteria of value in expropriation proceedings. (State Through Department of Highways vs. Barber, (1959) 115 So.2d 864; 238 La. 587).’
“With regard to the various approaches used by experts in determining value, the Courts have said:
“ ‘Where there have been no sales of similar property in the vicinity of the property expropriated, other circumstances and factors must be explored in order to discover true value. (State vs. Barber, supra.)’
“As to the replacement cost approach, the Supreme Court has held:
“ ‘Among these other factors some consideration may be given to replacement cost less depreciation, provided it is reflected in the price the property would bring on the market at the time of the expropriation. (State vs. Barber, supra.)’
“As to the income approach, the Supreme Court has held:
“ ‘The rental value of, or income from, property expropriated is not the measure of compensation but is material only insofar as it throws light on the market value of the property. (Mississippi River Bridge *610 Authority vs. Curry (1957) 94 So.2d 9; 232 La. 140.)’”
The plaintiff bases the estimate of the market value of the building on what Mr. Roseman considered to be a comparable sale in the neighborhood, the Moss Building. The Moss Building is three blocks nearer the center of town than the Cefalu building, is an A-l office building, air conditioned, has a small parking area, and is well designed for the purpose for which it is intended. It was sold September 23, 1956 for $100,000.00.[2] The Moss Building contains a total of 7680 square feet as compared with 11,074 square feet in the Cefalu building.
Mr. Roseman testified that in order to compare the two buildings exactly, approximately $16,000.00 would have to be spent on parking space and another $15,-000.00 for air conditioning the Cefalu building. An additional $31,000 would have had to be expended in order to assure that the Cefalu building would produce income equal to that being produced by the Moss Building. Thus, these factors offset the larger area in the Cefalu building and bring the two buildings into comparability.
Mr. Doiron pointed out that the Moss Building was designed for office rentals, where the Cefalu building lent itself more readily to merchandising. He further stressed the fact that there were five recorded leases covering the Moss building, which leases he considered to be a burden to the property because of the low rental provided for and the services the landlord was required to render. Mr. Roseman, though unfamiliar with the leases, was of the opinion that the Moss building was producing its maximum revenue.
Both Mr. Doiron and Mr. Roseman had fully examined the Moss building but Mr. Doiron did not have the benefit of a close examination of the Cefalu building, but gathered his facts from a written report prepared by Mr. Roseman and from casual observations during his visits to the building on other business over a period of several years. Certainly, an expert may testify, and his testimony is entitled to weight, even though he has never fully examined the premises he seeks to appraise. But the testimony of an expert who has had the advantage of a careful personal inspection is considerably more valuable to the court.
The trial court found the Moss building was a comparable sale as to value, though the buildings were not physically comparable and we concur in and affirm this finding.
The second method used by the experts tO' determine value was the income approach. This method was completely rejected by' the trial judge and by Mr. Roseman, and properly so. Mr. Roseman used the actual revenues of the building, whereas the defendant’s experts used a higher figure based on their considered opinions as to what the property could produce under proper management. The market value of property is well defined as the price a willing buyer would pay and a willing seller accept. The higher speculative rental income tends to increase the amount a buyer would be willing to pay. However, the actual low rental tends to decrease the minimum a willing seller would accept. Therefore, the market value of this property based on the income approach would be somewhere between the estimates of the experts for defendant and the plaintiff’s expert. Mr. Roseman discarded this method because it produced a value less than the amount tendered.
The trial judge assumed that a properly managed property could increase the rental income no more than 50%. This, however, would still produce a value below the amount tendered. In this case, the income approach is of doubtful validity and we reject it.
The third acceptable method of estimating value is the reproduction or replacement, less depreciation, method. The plaintiff has *611 impressed upon this court the important distinction between reproducing a building exactly and replacing it. In the case of an historic building, a church or a building of high architectural value, the reproduction method should be used. We believe the testimony of Mr. Roseman to be clear on this point as follows:
“Q. Explain if you will, before we begin that, the difference between replacement and reproduction and why one is used and the other is not, if that should be the case.
“A. Replacement means to replace a structure of equal size and utility.
“Q. It refers to utility primarily then?,
“A. Yes, sir.
“Q. Okay. Go ahead.
“A. Reproduction means to reproduce the structure in exact detail in which it was originally, such as one of these ante bellum homes.
“Q. Now, which of those methods do you employ for the purposes that you have here?
“A. I used the replacement method.”
We agree with Mr. Roseman that the reproduction method is not applicable to this case for the following reasons:
1. The building was functionally obsolete.
2. The heavy steel reinforced construction was not necessary for the highest use to which the building could be put, i. e. commercial rental.
3. There is no question of the building being valuable for its design.
Mr. Doiron admitted that his figures were based on reproduction costs rather than replacement costs. The contractor who built the building in 1939 or 1940 obviously based his testimony on the price necessary to reproduce the building, though he did speak of “replacement” cost. Mr. Pirello testified that the information used in arriving at his estimate of reproduction was given to him by Mr. Carter, and, therefore, his testimony on this point is of no value. It is clear that the testimony of all of defendant’s witnesses on the point of reproduction or replacement cost used square footage estimates to reproduce and not to replace the building.
Mr. Roseman’s testimony, on the other hand, was based on his estimate of the costs necessary to replace this building with a functional building of more modern design, substituting current construction methods and current available materials for those methods and materials actually used in the Cefalu building.
We are, therefore, of the opinion that the estimates of Mr. Roseman, based on the replacement costs of the building, less depreciation of $67,000.00 plus land value of $32,775.00 for a total of $99,775.00 more nearly approximates its market value.
For these reasons we find no error in the holding of the lower court that $100,000.00 represents a fair and adequate compensation for the Cefalu building and land based on its market value as of November 1957.
For the above and foregoing reasons the judgment of the Lower Court in denying plaintiff’s petition and prayer for final judgment, the objection to the introduction of any evidence on the merits of the case, is hereby reversed and the exception of no cause or right of action filed in this court on appeal is hereby maintained and the defendant’s demand for an increased award is rejected.
It is further ordered, adjudged and decreed that the award as fixed by the trial court in the sum of $100,000.00 is hereby affirmed.
It is further ordered that the defendant pay all costs.
Reversed in part and affirmed in part.
HERGET, J., recused.

. Mr. Roseman estimated the land to have been valued at $35,387.00 and the building at $64,613.00.